The judgment of the United States Customs Court is *reversed.*

UNITED STATES *v.* J. A. FREEMAN & SON (No. 4335) [1]

[1] C. A. D. 177.

United States Court of Customs and Patent Appeals, June 9, 1941

*Charles D. Lawrence*, Acting Assistant Attorney General (*Richard E. Fitz-Gibbon*, special attorney, of counsel) for the United States.
*Philip Stein* for appellee.

[Oral argument April 15, 1941, by Mr. Lawrence]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

The importer, appellee here, brought suit against the United States in the United States Customs Court to recover certain customs

duties alleged to have been erroneously exacted by the collector of customs at the port of Portland, Oreg., upon an importation of certain steel balls, roller bearings, chains, rivets, bolts and nuts.

The merchandise was classified and assessed for duty under several paragraphs of title I of the Tariff Act of 1930.

The steel balls and roller bearings were classified and assessed with duty under paragraph 321 which reads as follows:

PAR. 321. Antifriction balls and rollers, metal balls and rollers commonly used in ball or roller bearings, metal ball or roller bearings, and parts thereof, whether finished or unfinished, for whatever use intended, 10 cents per pound and 45 per centum ad valorem.

The chains were classified and assessed with duty at 35 per centum ad valorem under that portion of paragraph 329 which is as follows:

PAR. 329. * * * chains of iron or steel, used for the transmission of power, of not more than two-inch pitch and containing more than three parts per pitch, and parts thereof, finished or unfinished, 40 per centum ad valorem; all other chains used for the transmission of power and parts thereof, 35 per centum ad valorem; * * *

The rivets were classified and assessed with duty under that portion of paragraph 332 reading as follows:

PAR. 332. * * * rivets of iron or steel, not specially provided for, 1 cent per pound.

The bolts and nuts were classified and assessed with duty at 1 cent per pound under paragraph 330, reading as follows:

PAR. 330. Nuts, nut blanks and washers, of wrought iron or steel, six-tenths of 1 cent per pound; bolts, with or without threads or nuts, and bolt blanks, of iron or steel, 1 cent per pound; spiral nut locks, and lock washers, of iron or steel, 35 per centum ad valorem.

It was claimed by the importer that the merchandise was entitled to free entry under paragraph 1604 of the said act, which reads:

PAR. 1604. Agricultural implements: Plows, tooth or disk harrows, headers, harvesters, reapers, agricultural drills and planters, mowers, horserakes, cultivators, thrashing machines, cotton gins, machinery for use in the manufacture of sugar, wagons and carts, cream separators valued at not more than $50 each, and all other agricultural implements of any kind or description, not specially provided for, whether in whole or in parts, including repair parts: *Provided*, That no article specified by name in Title I shall be free of duty under this paragraph.

The suit was tried in the city of Portland, Oreg. One witness, who was the manager and a member of the plaintiff firm, testified in its behalf. The government submitted no evidence. After trial the case was duly submitted and the court thereafter rendered judgment in favor of the plaintiff, sustaining the protest. From the judgment this appeal was taken. There was no appearance here for appellee by brief or counsel.

All of the involved items of merchandise were imported to be used as parts of agricultural implements (mowers), so that the issue before

us is whether or not the imported articles are, on the record here, properly dutiable as was held by the collector by reason of the final clause of paragraph 1604, *supra*, "*Provided*, That no article specified by name in Title I shall be free of duty under this paragraph."

The trial court in its decision stated as follows:

Upon this record we find as a matter of fact that while the merchandise at bar may be described by the terms used by the appraiser, nevertheless they are all parts or repair parts of mowers and as such are *eo nomine* accorded free entry under said paragraph 1604. To hold, as the Government contends, that these parts are excluded from the benefits of said paragraph 1604 by virtue of the proviso in said paragraph, would defeat the plain intent of the Congress. Practically all of the metal parts of the various agricultural implements specifically mentioned in paragraph 1604 are *eo nomine* provided for in title I of the Tariff Act of 1930.

and on the authority of the case of *United States* v. *American Express Co.*, 12 Ct. Cust. Appls. 483, T. D. 40693, held the involved merchandise to be properly entitled to free entry under said paragraph 1604 as parts of mowers.

In that case, the imported articles and their use were set out in the opinion of this court as follows:

The articles imported are made of metal, and are in the form of adjustable plates about 7 inches in length by 3 inches in width and approximately one-fourth inch in thickness, having a series of parallel sharp cutting edges on one side, with V-shaped grooves, or channels, between these parallel blades. These articles are used exclusively as parts of sugar-making machinery. As so used, they are adjusted on the inner surface of a cylindrical revolving drum. Beets are fed into this drum through a hopper, and by a mechanical device, held against this revolving drum; as it revolves, long, V-shaped slices of the beet substance, known as cossettes, are removed from the beets in the drum by the action of the knives and channels in the plates above mentioned, and discharged into the batteries. It is shown by the testimony that the articles of importation thus used are essential to beet-sugar-making machinery, and perform not only the function of cutting the beets into shreds or slices, but also that of forming these shreds, or pieces, of beet substance, into a form where the following diffusion processes will more readily take place.

They had been classified for duty by the collector under the provision for "all other cutting knives used in power or hand machines" at 20 per centum ad valorem under paragraph 356 of the Tariff Act of 1922, and were claimed by the importer to be free of duty under paragraph 1504 of that act which is identical to paragraph 1604 of the Tariff Act of 1930.

In that case the court pointed out that under paragraph 391 of the tariff act of October 3, 1913, all agricultural implements "whether specifically mentioned herein or not" were free of duty. The same duty free status also applied whether the articles imported were "in whole or in parts, including repair parts." Paragraph 1504 of the act of 1922 narrowed the scope of the free-list provisions of said paragraph 391 in that it made dutiable any article that would have been

free of duty under said paragraph 391 if it were specified by name in the dutiable list of the Tariff Act of 1922. Paragraph 1604 of the said act of 1930 does likewise.

This court in the *American Express Co.* case, *supra*, merely held that the language relied upon by the government to sustain the collector's classification was not a specific or *eo nomine* designation of the involved merchandise, stating:

Such language does not constitute a specific or *en nomine* designation of the articles of importation here. In the first place, the evidence shows that these articles are more than knives and perform other essential processes in the making of beet sugar besides the mere cutting of the beets used. But, aside from that, it cannot be held that such general language as "all other cutting knives and blades used in power or hand machines" should be considered as a special provision for and supplanting such specific language as that of paragraph 1504: "Machinery for use in the manufacture of sugar * * * whether in whole or in parts, including repair parts."

We think it is clear that in enacting paragraph 1604 of the present tariff act the purpose of the Congress was the same as when said paragraph 1504 was enacted. In the *American Express Co.* case, *supra*, this court said:

The purpose which Congress had in enacting paragraph 1504 must be borne in mind. Obviously, it was to give to agriculture any advantage which there might be in the free importation of the implements and machinery of agriculture and their parts. To hold, as contended for by appellant here, would be to do violence to such intention. It would result in the imposition of duties on the importation of every cutting part of an agricultural machine imported, although *not specifically named* for dutiable purposes in the act, whether it was a plowshare, a sickle section for a mower or reaper, a rolling cutter, a blade for a stalk or ensilage cutter, or any other part of such a machine which might happen to have a cutting edge or surface. We cannot adopt such a construction. [Italics supplied.]

It is clear, under the construction given said paragraph 1504 by this court in the *American Express Co.* case, *supra*, that it would not defeat the intent of Congress in the instant case to exclude parts of agricultural implements from the free list if they are specified by name in any of the duty-carrying paragraphs. Therefore, we must examine the record here to determine which, if any, of the imported articles have been proved to be not specified by name in the Tariff Act of 1930.

The witness herein testified first as to the ⅝″ steel balls, listed under part number D2617 on invoice 10165. He stated that they were ordered for use on Deering mowers; that they would "reduce friction"; that they could be used "Any place on an agricultural implement where you needed a ⅝″ ball"; and, on cross-examination, that any ⅝″ steel ball could be used on the Deering mower. In our opinion these steel balls, particularly since they are used to "reduce friction," are specified by name in paragraph 321, *supra*, as "Antifriction balls * * * for whatever use intended," and are properly dutiable thereunder.

The witness next testified with regard to part number M91½, listed as Nuts for M90 on the same invoice. He testified that they were used for the M90 wrist pin on McCormick mowers, and that they did not have a standard pitch thread and were suitable for no use other than on the wrist pins, M90, which the collector considered to be free of duty. The evidence further indicated that if the nuts had been imported on the wrist pins they would likewise have been held duty free. Since they are nuts with a special pitch of thread, and suitable only for the single use as aforesaid, it seems to us that they are not to be properly considered as having been specifically named in paragraph 330, *supra*, and should therefore be held to be free of duty.

With respect to the pitman bolts, listed as part number M483 on invoice 10165, the evidence showed that these are ordinary bolts with a left-hand thread. The expression "pitman bolts" merely means that they are bolts that are used to connect at either end a pitman—which, in this case, is a connecting rod from the sickle head of the mower to the wrist pin on the balance wheel. A pitman, or connecting rod, is found in many machines which are not agricultural implements, and any bolt of proper diameter and length could be used on any pitman. The fact that these bolts have a left-thread does not, of itself, remove them from the purview of paragraph 330. It appears that such bolts are made in this country, and it is a matter of common knowledge that bolts with left-hand threads are used in many machines not agricultural implements where such thread is desired. Therefore, in our opinion these bolts are specifically named in said paragraph 330, and are properly dutiable thereunder.

The witness next testified as to the chain, part number PK135, listed on invoice 10165. He stated that "It is just the right length for use in the Milwaukee chain-drive mower," and, "It might be used for most any purpose, as far as that is concerned, if a man wanted to use it, but I don't believe anyone would go out and buy PK135 unless it was for use on the Milwaukee chain-drive mower." On this record we think it fairly appears that the chain involved is "used for the transmission of power." Assuming that it could be used only on a Milwaukee mower, nevertheless it is clear that paragraph 329 provides for all chains of iron or steel used in the transmission of power. The wording of the paragraph certainly specifies by name the kind of chain here identified as PK 135. Therefore, this article is properly dutiable under the said paragraph 329, as held by the collector.

There was no testimony as to any of the remaining items covered by the importation. As to such remaining items, therefore, the appellee failed to sustain his burden of proof that the collector's classification was erroneous and that the articles were properly duty free as claimed, and the collector's classification must be upheld.

As to the M91½ nuts for M90, listed on invoice 10165, the judgment appealed from is *affirmed.* As to all other items included in this appeal the judgment appealed from is *reversed,* and the cause is *remanded* for proceedings consistent with the views herein expressed.