(C. D. 1823)

Compañia Azucarera Del Camuy, Inc. *v.* United States

199

United States Customs Court, Second Division

(Decided November 15, 1956)

*Francesco M. Susoni, Jr.*, for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Richard E. FitzGibbon*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge:  Plaintiff imported merchandise described on the consular invoice as "286 barrels Sugar Cane Slings."

The collector of customs classified the merchandise as "chains of iron or steel, 7/16" diameter," in accordance with the terms of paragraph 329 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 329), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and imposed duty thereon at the rate of one-half of 1 cent per pound.

Plaintiff claims by its protest that said merchandise, consisting of 2,000 sugarcane slings, is entitled to classification within the agricultural implements provisions of paragraph 1604 of said act (19 U. S. C. § 1201, par. 1604) and should be given the benefit of entry free of duty.

### THE STATUTES

Paragraph 329 of the Tariff Act of 1930, *supra*, is here set forth, certain portions thereof being stressed, and it is followed by the President's modification thereof in T. D. 51802:

*Chain and chains of all kinds, made of iron or steel,* not less than three-fourths of one inch in diameter, seven-eighths of 1 cent per pound; less than three-fourths and not less than three-eighths of one inch in diameter, 1⅛ cents per pound; less

than three-eighths and not less than five-sixteenths of one inch in diameter, 2⅛ cents per pound; less than five-sixteenths of one inch in diameter, 4 cents per pound; chains of iron or steel, used for the transmission of power, of not more than two-inch pitch and containing more than three parts per pitch, and parts thereof, finished or unfinished, 40 per centum ad valorem; all other chains used for the transmission of power, and parts thereof, 35 per centum ad valorem; anchor or stud link chain, two inches or more in diameter, 1½ cents per pound; less than two inches in diameter, 2 cents per pound; *Provided, That all articles manufactured wholly or in chief value of chain shall not be subject to a lower rate of duty than that imposed upon the chain of which it is made, or of which chain is the component material of chief value.*

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 329 | Chain and chains of all kinds, made of iron or steel:     Not less than three-eighths of one inch in diameter_____ | ½¢ per lb. |
| * | *    *    *    * | *     * |

Paragraph 1604 of said act is also quoted, with certain parts stressed:

Agricultural implements: Plows, tooth or disk harrows, headers, harvesters, reapers, agricultural drills and planters, mowers, horserakes, cultivators, thrashing machines, cotton gins, machinery for use in the manufacture of sugar, wagons and carts, cream separators valued at not more than $50 each, and all other agricultural implements of any kind or description, not specially provided for, whether in whole or in parts, including repair parts: *Provided, That no article specified by name in Title I shall be free of duty under this paragraph.*

No oral testimony was introduced at the trial, adversary counsel agreeing upon the salient facts of the case. It was stipulated that the sugarcane slings in controversy are used exclusively for the manufacture of sugar, and it has been agreed that this is their only known use. A pamphlet, which was received in evidence as plaintiff's exhibit 1, was introduced to illustrate the manner in which the slings are used. A sample of one of the imported articles was received in evidence as plaintiff's exhibit 2.

From an examination of the illustration and descriptive matter in exhibit 1, it appears that a sugarcane sling consists of two parts:

1) An especially strong chain E surrounding the cane bundle. The chain is to be fastened by hook C, which can be unlatched automatically. * * *

2) An automatic system containing a free turning grooved pulley, which allows the chain to run more easily when tightening the bundle. Close to the pulley there is a latch B which is held in its position by a spring. * * *

II.   Directions for use

Generally two or three slings are used for handling the bundle.   Slings are often laid loosely across the cart to be filled.   When the cart has been fully loaded, the ends of the sling are brought together over the top of the loading, putting the ring E in the hook C.   Then the other end of the chain is pulled up by hand until the loading is sufficiently held tight.

At the transfer place the ring of the loose·end of the chain is hooked on the crane.   Hoisting it, the bundle is tightened more and more by acting of the trigger B.

When the bundle is to be loosened, only the clasp D has to be unlatched.  * * *

In other words, when sugarcane is brought from the fields on trucks to the mills or refineries, these slings facilitate the economical handling of the sugarcane in transferring it from the field to the carrier and from the carrier to moving belts in the mill which convey the cane to the crushers.

After the agreement of adversary counsel that the only known use for the articles in controversy is for the manufacture of sugar, counsel for the defendant stated: "As I see it, your Honor, the question presented here is purely one of law.   The provision under which the merchandise was classified has a proviso that reads, 'That all articles manufactured wholly or in chief value of chain shall not be subject to a lower rate of duty than that imposed upon the chain of which it is made, or of which chain is the component material of chief value.'   And, in the paragraph under which it is claimed, the agricultural implement paragraph,.which provides free duty, there is also a proviso that reads, 'That no article specified by name in Title I shall be free of duty under this paragraph.'   So, the attorney for the importer will submit a brief and the Government will submit its brief and we will argue this point of law in our briefs."

That the case, as submitted to us for decision, is regarded as one presenting solely a question of law is further emphasized by the statement in defendant's brief as follows: "Since the facts are conceded, we feel that the case presents a question of law only which arises from the 'proviso' sentences of each paragraph."

It will be recalled that each paragraph contains an important proviso.   Paragraph 1604 excludes from its benefits any article *"specified by name* in Title I" of the act.   Paragraph 329 provides "That *all articles manufactured wholly or in chief value of chain* shall not be subject to a lower rate of duty than that imposed upon the chain of which it is made, or of which chain is the component material of chief value."   [Italics supplied.]

It seems clear beyond question that the subject slings are articles manufactured wholly or in chief value of chain and, in the absence of any other qualification, would seem to be properly within the pur-

view of paragraph 329, *supra,* and subject to no lower rate of duty than that imposed upon the chain of which they are made.

In determining the issue here presented, consideration must be given to the impact of the provisos in the competing paragraphs, namely, 329 and 1604. The provision for agricultural implements in paragraph 1604 is qualified by the proviso "That no article *specified by name* in Title I shall be free of duty under this paragraph." [Italics supplied.]

Defendant, in support of its contention that the proviso in paragraph 1604 does exclude the subject merchandise from its terms, invites our attention to the case of *United States* v. *J. A. Freeman & Son,* 29 C. C. P. A. (Customs) 103, C. A. D. 177. The merchandise before the court in that action consisted of various items, such as steel balls, roller bearings, nuts, bolts, and chains, all of which were used as spare parts of agricultural implements (mowers), which had been classified in several duty paragraphs of the Tariff Act of 1930 and were claimed to be free of duty as parts of agricultural implements.

In the course of its opinion, the court observed:

All of the involved items of merchandise were imported to be used as parts of agricultural implements (mowers), so that the issue before us is whether or not the imported articles are, on the record here, properly dutiable as was held by the collector by reason of the final clause of paragraph 1604, *supra, "Provided,* That no article specified by name in Title I shall be free of duty under this paragraph."

It was the opinion of the court in the *Freeman* case, *supra,* that, except for the item of nuts, all of the articles in controversy were specified by name in various provisions of Title I of the tariff act and, therefore, were excluded from the duty-free provisions of paragraph 1604. As to the item of nuts, the court held that, inasmuch as they had a special pitch of thread and were suitable only for the single use with a particular wrist pin on McCormick mowers, they could not properly be considered as having been specifically named within the broad provision for "Nuts" in paragraph 330 of the Tariff Act of 1930 and were properly classifiable as parts of mowers in paragraph 1604 of said act.

In our opinion, the *Freeman* case, *supra,* is clearly distinguishable from the case at bar. Authorities which we deem to be more in point and controlling of our decision herein will be discussed below, notably *United States* v. *American Express Co.,* 12 Ct. Cust. Appls. 483, T. D. 40693, and *United States* v. *S. S. Perry,* 25 C. C. P. A. (Customs) 282, T. D. 49395.

In the *American Express* case, certain metal articles in the form of adjustable plates, having a series of parallel, sharp-cutting edges on one side and used exclusively as parts of sugarmaking machinery, had been classified by the collector as "all other cutting knives used in

power or hand machines" in paragraph 356 of the Tariff Act of 1922. In the course of its opinion, the court said:

Such language does not constitute a specific or eo nomine designation of the articles of importation here. In the first place, the evidence shows that these articles are more than knives and perform other essential processes in the making of beet sugar besides the mere cutting of the beets used. But, aside from that, it can not be held that such general language as "all other cutting knives and blades used in power or hand machines" should be considered as a special provision for and supplanting such specific language as that of paragraph 1504: "Machinery for use in the manufacture of sugar * * * whether in whole or in parts, including repair parts."

It may be noted that paragraph 1504 of the Tariff Act of 1922 was reenacted verbatim as paragraph 1604 of the Tariff Act of 1930, with which we are here concerned.

The court in the *American Express* case, *supra*, also pointed out the purpose which Congress had in enacting said paragraph 1504:

* * * Obviously, it was to give to agriculture any advantage which there might be in the free importation of the implements and machinery of agriculture and their parts. To hold, as contended for by appellant here, would be to do violence to such intention. It would result in the imposition of duties on the importation of every cutting part of an agricultural machine imported, although not specifically named for dutiable purposes in the act, whether it was a plow share, a sickle section for a mower or reaper, a rolling cutter, a blade for a stalk or ensilage cutter, or any other part of such a machine which might happen to have a cutting edge or surface. We can not adopt such a construction. The evident intent to benefit agriculture should be effectuated.—Magone *v.* Heller (150 U. S. 70); United States *v.* Ducommun Hardware Co. (7 Ct. Cust. Appls. 353; T. D. 36904. * * *

In the *Perry* case, *supra*, celluloid poultry leg bands, chiefly used for the identification of poultry, were held to be free of duty as agricultural implements, pursuant to the terms of paragraph 1604, *supra*, and not classifiable for duty as "all compounds of cellulose made into finished articles." In the course of its opinion, the court made the following observations:

The next question to decide is whether or not the leg bands at bar are articles "specified by name in Title I" of the Tariff Act of 1930. If this question is answered in the affirmative, it follows that the merchandise is not free of duty under paragraph 1604. It will be noticed that the proviso says: "specified by name." The phrase "not specially provided for" was not depended upon by Congress, as is so frequently the case in the enactment of tariff paragraphs, to bring about the result desired. In order for it to be taken out of the agricultural implement paragraph by other provisions it was necessary that it had to be "specified by name" in some provision of title I.

Further, the court remarked:

To hold that the term "all compounds of cellulose * * * made into finished * * * articles" is specifying celluloid poultry leg bands by name, would, in our opinion, unduly restrict the application of the very broad phrase in paragraph 1604 "and all other agricultural implements of any kind or description." We do not think that when Congress used the term "specified by name" it used it

synonymously with "provided for." The term "all compounds of cellulose * * * made into finished * * * articles" is quite general in its scope. There are many different kinds of compounds and many different kinds of compounds of cellulose. To name a general class such as is done in paragraph 31, *supra*, is not to specify an article by name, within the meaning of paragraph 1604.

The court referred, with apparent approval, to its earlier decision in *United States* v. *American Express Co., supra.* The controlling effect of the *American Express* and *Perry* decisions in the case at bar is obvious.

Following the reasoning of our appellate court in the *American Express* and *Perry* cases, *supra*, wherein it was found that tariff provisions for "all other cutting knives and blades used in power or hand machines" and "all compounds of cellulose * * * made into finished * * * articles" were not such specifications by name in title I as would exclude adjustable blades with sharp-cutting edges and celluloid poultry leg bands from classification as agricultural implements in the free list of the Tariff Acts of 1922 and 1930, it is our opinion that the particular provision for "all articles manufactured wholly or in chief value of chain * * * or of which chain is the component material of chief value" does not specify by name the sugarcane slings presently before the court.

Therefore, upon the record as presented to us for decision and confining ourselves to the question of law upon which the case was submitted, we find and hold that the sugarcane slings in controversy are not specified by name in title I of the Tariff Act of 1930, but are within the purview of the agricultural implements provisions of paragraph 1604 of said act and entitled to entry free of duty.

The protest is sustained, and judgment will issue directing the collector of customs to reliquidate the entry accordingly.