BEFORE THE FIRST DIVISION, FEBRUARY 14, 1962

No. 66459.—H. F. Ayers *v.* United States, protest 60/19761 (St. Albans).

Oliver, Chief Judge: The merchandise in question is a so-called hydrotherm, which was classified as laboratory glassware under paragraph 218(a) of the Tariff Act of 1930, as modified, with a duty assessment at the rate of 42½ per centum ad valorem. Plaintiff claims that the merchandise is free of duty as an agricultural implement under paragraph 1604 of the Tariff Act of 1930, which reads as follows:

Par. 1604. Agricultural implements: Plows, tooth or disk harrows, headers, harvesters, reapers, agricultural drills and planters, mowers, horserakes, cultivators, thrashing machine, cotton gins, machinery for use in the manufacture of sugar, wagons and carts, cream separators valued at not more than $50 each, and all other agricultural implements of any kind or description, not specially provided for, whether in whole or in parts, including repair parts: *Provided*, That no article specified by name in Title I shall be free of duty under this paragraph.

All of the evidence adduced herein was offered by plaintiff, the inventor of the hydrotherm under consideration.

From an examination of the sample (plaintiff's exhibit 1), it appears that this hydrotherm is a combination hydrometer and thermometer. It is made of glass and is precision built, having a Baume scale that is described herein as a form of measurement for viscous liquids.

Plaintiff's uncontradicted testimony can be summarized as follows: The hydrotherm in question is used in the maple-sirup producing industry as an instrument or a utensil for determining the concentration of maple sap in the processing thereof into maple sugar, and that such work is done in sap houses, located on farms engaged in the development and marketing of maple crops. Agriculture Handbook No. 134, titled, "Maple Sirup Producers Manual," a publication of the United States Department of Agriculture, describes the article in question, at page 28 (plaintiff's exhibit 3), as follows:

A special hydrometer, the hydrotherm * * * has a liquid thermometer built into it that automatically locates the point on the hydrometer (top of thermometer liquid column) for standard-density sirup. The accuracy of this instrument depends on the relationship of lineal expansion of the thermometer liquid to lineal displacement of the hydrometer stem by standard-density sirup at different temperatures. In use, sufficient time must be allowed for the thermometer of the hydrotherm to warm to the temperature of the sirup.

As early as 1915, in *United States* v. *Boker & Co.*, 6 Ct. Cust. Appls. 243, T.D. 35472, the tariff provision for "agricultural implements" was the subject of judicial interpretation. In the cited case, the appellate court cited several definitions of the word, "agriculture," and then stated as follows:

While, therefore, "agriculture" in its broad application may extend into and include elements of horticulture, viticulture, arbor culture, and other *allied* industries and pursuits, in its primary significance it extends to and embraces only those parts of all such as pertain to human and incidental animal subsistence—the substantial requirements of life (food) and possibly man's comfort (raiment), and not the merely pleasurable pursuits; the necessities and not the essentially pleasurable or ornamental.

* * * There is no implement enumerated within the paragraph that is not devoted to the production of food or raiment for man, and there is none so enumerated that is employed in his other pursuits.

Much stress is laid upon the words "all other agricultural implements of any kind and description." While the words "of any kind and description" are broad and most comprehensive, we must bear in mind that they are predicated of and limited to *"agricultural* implements" and therefore can not include more than those terms embrace, though of course their effect and office is to exhaust everything within that literal confinement. We are accordingly relegated to those words as above defined for the scope of this phrase and paragraph. [Italics quoted.]

All these considerations imply and necessitate that *the use of the implement* must determine its classification whether or not an agricultural implement within the paragraph, and that that use, and the determinative fact, *is chief use.* [Italics supplied.]

In *United States* v. *American Express Co.*, 12 Ct. Cust. Appls. 483, T.D. 40693, the court emphasized that the provision for "agricultural implements" is to be

given liberal tariff application, so that there might be carried out the evident intent of Congress "to give to agriculture any advantage which there might be in the free importation of the implements and machinery of agriculture and their parts."

Consistent with the statutory construction enunciated in the *Boker* and *American Express Co.* cases, *supra*, the Court of Customs and Patent Appeals, in *United States* v. *S. S. Perry*, 25 C.C.P.A. (Customs) 282, T.D. 49395, held certain celluloid poultry leg bands, used for identification purposes in the raising of poultry, to be classifiable as agricultural implements. In reaching its conclusion, the court commented on the word "implement," as it appears in paragraph 1604, *supra*, and stated as follows (p. 286) :

\* \* \* We think the term "implements of any kind or description" as it appears in paragraph 1604 should not be given its narrowest meaning. Frequently, "implement" is regarded as being synonymous with a tool or utensil used in manual work. The term has a broader meaning which we think should be accepted in arriving at the intent of Congress in the enactment of paragraph 1604. We quote several definitions of the noun "implement" from Webster's New International Dictionary :

> implement. 1. That which fulfills or supplies a want or use; esp., an instrument, tool, or utensil used by man to accomplish a given work; as the *implements* of trade, of husbandry, or of war.
> 2. A constituent part; an element *Obs. & R.*
> 3. *Scots Law.* Fulfillment, performance.
> Syn. *implement, tool, utensil, instrument* agree in suggesting relatively simple construction and personal manipulation. *Implement* and *tool* are often interchangeable. But *implement* is the broader term, frequently implying that by which any operation is carried on : *tool* commonly suggests the implements of a craftsman or laborer ; \* \* \*.

The *Perry* case was cited with approval by our appellate court in *Wilbur-Ellis Co.* v. *United States*, 26 C.C.P.A. (Customs) 403, C.A.D. 47, in holding certain steel bale ties to be classifiable as agricultural implements. The conclusion was based on a finding that the bale ties were chiefly used in baling hay for the market (an agricultural pursuit) and that they "are obviously implements within the broad meaning of that term," as it appears in paragraph 1604, *supra*.

Under the broad interpretation of the statutory term, "agricultural implements," as enunciated in the judicial authorities, heretofore reviewed, the hydrotherm under consideration is properly classifiable as such under said paragraph 1604. Plaintiff's evidence, which is wholly uncontradicted shows that the hydrotherm in question is particularly adapted for use in the maple-sirup producing industry, unquestionably an agricultural pursuit, where it is exclusively employed in the production of maple sirup.

In giving plaintiff's (the inventor's) testimony sufficient weight, as we do, to establish a *prima facie* case favorable to his contention, we recognize the probative value of such testimony, expressed in *Klipstein* v. *United States*, 1 Ct. Cust. Appls. 122, T.D. 31120, as follows :

\* \* \* Importers and merchants are naturally desirous of increasing the number of their customers and the demand for the goods in which they deal, and as they have every incentive for knowing the uses to which their wares are or may be put it is only fair to assume, at least *prima facie*, that the only uses known to them are the only uses of such wares. \* \* \*

On the basis of the present record and for all of the reasons hereinabove set forth, we hold the hydrotherm in question to be free of duty under paragraph 1604 of the Tariff Act of 1930 as an agricultural implement, as claimed by plaintiff.

339

Cases cited in defendant's brief are not pertinent herein, either from a factual standpoint or from a legal aspect. *Scientific Materials Co.* v. *United States*, 45 Treas. Dec. 840, T.D. 40286; *O. G. Hempstead & Son* v. *United States*, 51 Treas. Dec. 1003, T.D. 42276; and *O. G. Hempstead & Son* v. *United States*, 16 Ct. Cust. Appls. 427, T.D. 43173. Since all of those cases involved issues materially different from the question presented herein, we deem it unnecessary to review them.

The protest is sustained and judgment will be rendered accordingly.